IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ALCON CONTRACTORS LLC | § | CASE NO. 22-50498-CAG |
| | § | |
| | § | (Chapter 11) |
| Debtor | § | |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION DATED 10/19/2022**

  Now Comes ALCON Contractors LLC (referred to herein as the "Debtor") and propose the following Amended Plan of Reorganization pursuant to the provisions Subchapter V of Chapter 11 of the Bankruptcy Code and Rule 2015(b) of the Federal Rules of Bankruptcy Procedure:

**Disclosures Required for Cases Filed Under Subchapter V**

 **A. Description and History of the Debtor's Business**

 1. On May 9, 2022, Alcon Contractors LLC ("Debtor") filed its voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. Debtor operates a construction site preparation business. This requires the use of heavy machinery such as bobcats and heavy-duty trucks. The business has been in operation for several years.

 2. Initially, Debtor had just focused on residential site preparation. In 2019, Debor elected to venture into the commercial site preparation market. The commercial market proved to be quite competitive and the margins earned by the Debtor was less than expected. Additionally, the commercial market proved to be a "slower paying" market which resulted in Debtor's cash flow problem. During that time, Debtor had to result to borrowing money from merchant lenders. Once these loans went into repayment Debtor was unable to keep up with its other obligations.

 3. In May of 2022, a merchant account lender resumed collection activity against the Debtor and issued a levy on Debtor's bank accounts. Debtor was left with no choice other than file a chapter11 bankruptcy. The Debtor is optimistic that the significant advantages available under Subchapter V provide a better opportunity to address outstanding obligations debt and finally resolve the same.

 4. The Debtor is proposing a plan of reorganization that contemplates the repayment of all secured and priority unsecured claims as well as a 10% dividend payout to all general unsecured creditors.

**B. Liquidation Analysis**

5. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit "A".

### C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

6. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. Projections that support the Debtor's ability to make all payments required by the Plan are attached to the Plan as Exhibit "B". *See* 11 U.S.C. § 1190.

7. The Debtor has provided projected financial information as Exhibit "B". The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2). The final Plan payment is expected to be paid on the August 1, 2027

### ARTICLE 1: SUMMARY

1.01 This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from cash flow generated by net income generated by the operation of Debtor's business. The Debtor plans to pay-off 10% of its existing general unsecured creditor liabilities. All allowed administration expenses, secured claims and priority unsecured claims will be paid in full.

This Plan provides for:

[ 1] class of priority unsecured claims;
[ 3] classes of secured claims; and
[ 1] classes of non-priority unsecured claims.

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately seven cents on the dollar.

**Payment of administrative expenses and priority claims**: This Plan provides for full payment of administrative expenses and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

*Your rights may be affected. You should read these papers*
*carefully and discuss them with your attorney, if you have*
*one. (If you do not have an attorney, you may wish to consult one.)*

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

2.01: Class 1. All allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) and priority tax claims under § 507(a)(8)) including the priority claim of the Texas Workforce Commission.

2.02: Class 2. The secured claim of U.S. Small Business Administration to the extent allowed as a secured claim under § 506 of the Code.

2.03: Class 3. The secured claims, to the extent allowed as a secured claim under § 506 of the Code, of:
    1. The Huntington Bank (claim nos. 15, 16, 17.)
    2. Randolph Brooks Federal Credit Union
    3. Caterpillar Financial Services

2.04 Class 4: The secured claim of Bexar County to the extent allowed as a secured claim under § 506 of the Code.

2.05 Class 5. All non-priority unsecured claims allowed under § 502 of the Code.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

3.01: Unclassified claims. Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes.

3.02: Administrative expenses. Administrative expenses allowed under § 503 of the will be paid in six (6) monthly installments beginning the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Such expenses specifically include but is not limited to Subchapter V Trustee fees.

3.03: Priority tax claims. Each holder of an allowed priority tax claim will be paid in full through the plan in monthly plan payments over a sixty (60) month term. This includes the claim of the Texas Workforce Commission for employment taxes incurred pre-petition.

3.04: Statutory fees. All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.

3.05: Prospective quarterly fees. All quarterly fees required to be paid under 28 U.S.C. §1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01: Claims and interests are treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| Class 1- Priority Tax Claims | Impaired | Claim to be paid in by equal monthly payments over the 60-month term of the Plan with interest at the statutory rate of 4.25% |
| Class 2- Secured Claim of U.S. Small Business Administration | Impaired | Claim to be paid as a secured claim to the extent of the value of its collateral ($248,338.80) with interest at the contract (3.75%) in monthly installments of $1,190.87) for the remaining term of the contract (338 months). The remaining claim amount shall be treated as a Class 5 Non-priority Unsecured Claim |
| Class 3-Secured Claims (Equipment Claims) | Impaired | Claims will be paid in full over the 60-month term of the Plan with interest at 6.5%. Class 3 Claimants shall retain all liens and Debtor shall provide for insurance on the collateral consistent with the terms of pre-petition contracts. |
| Class 4- Secured Claim of Bexar County | Impaired | To be paid in full at the Effective Date |
| Class 5-Non-priority Unsecured Claims | Impaired | All claims to be paid in pro-rata monthly payment in a variable amount over the 60-month term of the Plan for a total amount of $78,517.20, or 10% of the unsecured claims total. |

### ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01: Disputed claim. A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

    (i)    A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

      (ii)      No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02: Delay of distribution on a disputed claim. No distribution will be made on account of a disputed claim unless and until it is allowed.

5.03: Settlement of disputed claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) The Debtor will assume the Lease Agreement with Leon Springs Business Park for the premises in which the Debtor operates.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than days after the date on which the court enters the order confirming this Plan.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Debtor has sufficient cash flow to meet the obligation of monthly plan payments in the amount of $6,100.00. All payments under the Plan shall begin thirty (30) days after the Effective Date.

## ARTICLE 8: GENERAL PROVISIONS

8.01: Definitions and rules of construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02: Effective Date. The effective date of this Plan is the day that is fourteen days following an entry of an order by the Court confirming this plan. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

8.03: Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04: Binding effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05: Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06: Controlling effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07: Retention of Jurisdiction. The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

8.08: Default Provisions: In the event that payments are not made by the Debtor as required by the Plan and Confirmation Order, the holders of allowed claims in this case and other parties-in-interest shall have the right to either: (A). file a motion to dismiss or convert this case to a case under Chapter 7 of the Bankruptcy Code; or (B). file a motion seeking relief from the automatic stay, in the event the Debtor defaults on a payment to a secured creditor.

## ARTICLE 9: DISCHARGE

9.01: If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i)      imposed by this Plan; or

    (ii)     to the extent provided in § 1141(d)(6).

9.02: If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### ARTICLE 10: OTHER PROVISIONS

10.1. The Debtor may amend, modify or withdraw the Plan at any time prior to the Confirmation Date. The Debtor may amend or modify this Plan in accordance with §1127 of the Bankruptcy Code at any time on or prior to the Effective Date. After the Effective Date, Debtor may propose amendments to the Plan for approval by the Bankruptcy Court.

Dated: October 19, 2022

| | |
|---|---|
| ALCON Contractors LLC | Villa & White LLP |
| | 1100 NW Loop 410 #700 |
| *By:/s/ Mark Garcia* | San Antonio, Texas 78213 |
| Mark Garcia, President | (210) 225-4500 Telephone |
| | (210) 212-4649 Facsimile |
| | By*: /s/ Morris E. "Trey" White III* |
| | Morris E. "Trey" White III |
| | Texas Bar No. 24003162 |
| | treywhite@villawhite.com |
| | Attorney for Debtor |

### **CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2022 a true and correct copy of the above and foregoing document was served on the following pursuant to Bankruptcy Rule 9013 to the parties listed on the attached matrix.

*/s/ Morris E. "Trey" White III*
Morris E. "Trey" White III